UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
CHARLES DEVITO,                                    :
                                                   :
                        Plaintiff,                 :        **OPINION AND ORDER**
                                                   :
            -against-                              :        03-CV-1927 (DLI)(RLM)
                                                   :
ARCHIBALD BARRANT (individually and as an official :
and officer of the New York City Department of     :
Correction (NYCDC)), THE CITY OF NEW YORK,         :
WILLIAM FRASER (individually and as Commissioner   :
of the NYCDC), THE NEW YORK CITY                   :
DEPARTMENT OF CORRECTION, CHIEF                     :
MERLADO, DEP. WARDEN DAVIS, CAPT. PURVIS,          :
CAPT. DELLARATTA, C.O. ROBINSON, C.O. JONES,       :
C.O. KELLY (individually and as correction officers of the :
NYCDC), DET. MAPHERSON, DET GUARDINO,              :
DET. RIVERA, D.I. MONAGHAN, CAPT. JACOB,           :
LT. BAGDZIUNAS, SGT. RANDAZZO, P.O. DEMATO,        :
P.O. PAUL, P.O. CAMACHO, P.O. STREMEL,             :
P.O. MALONEY (individually and as police officers of :
the New York City Police Department, and THE NEW   :
YORK CITY POLICE DEPARTMENT,                       :
                                                   :
                        Defendants.                :
------------------------------------------------------------------------x

**DORA L. IRIZARRY, U.S. District Judge:**

This civil rights lawsuit, brought pursuant to 42 U.S.C. § 1983, stems from the shooting of

plaintiff by defendant Archibald Barrant, an off-duty correction officer for the New York City

Department of Correction ("NYCDC" or "Department of Correction"), in the early morning hours

of April 22, 2002. Plaintiff alleges § 1983 claims of false arrest and excessive force and related

claims of failure to intervene and equal protection. Plaintiff also alleges state law claims of false

arrest, false imprisonment, violation of the New York State Constitution search and seizure clause,

battery, assault, negligence, negligent and intentional infliction of emotional harm, abuse of process, and negligent hiring, retention, training, and supervision. Two sets of defendants have moved for summary judgment: Archibald Barrant, individually, and the rest of the defendants (hereinafter "the City defendants"). The court will also address the City defendants' pending motion to bifurcate, for purposes of discovery and trial, plaintiff's municipal liability claims. For the reasons that follow, summary judgment is granted in part and denied in part. As set forth in more detail below, the action is dismissed as to all defendants except Barrant, former NYCDC Commissioner William Fraser, and the City of New York.

## I.    Facts

While riding his bicycle during the early morning hours of April 22, 2002, plaintiff observed a white van parked in the vicinity of 105th Street in Queens. Plaintiff broke into the van through the back window and removed some tools and a camera. As he was loading items from the van to a shopping cart, defendant Archibald Barrant, the owner of the van, yelled, "Hey," from a nearby window. At the time of the incident, Barrant was an off-duty correction officer for the New York City Department of Correction. As of March 11, 2002, Barrant was on terminal leave pending retirement, and he formally retired on July 31, 2002. Barrant was in plainclothes and carrying an off-duty personal gun that he was authorized to carry by virtue of his position with the Department of Correction and status as a peace officer.

The events after Barrant yelled at plaintiff and leading up to the shooting are largely disputed. According to plaintiff's deposition testimony, he fled from the scene on his bicycle when he heard the yelling and before defendant Barrant could approach him. Although plaintiff had seen someone

yelling at him from the window, he did not see Barrant's face. Plaintiff testified that he then stopped at a deli to buy cigarettes. While there, he heard a car screech and a man, later identified as Barrant, jumped out of the car. Barrant allegedly yelled at plaintiff and started running towards him with a gun in his hand. Plaintiff reports he rode away on his bicycle, and Barrant shot at him from behind. The bullet hit plaintiff in the lower left leg above his ankle. Plaintiff was lying on the ground and immobilized when Barrant approached him with his gun and said, "Don't fuck'n move or I'll fuck'n kill you." (Devito Dep. at 122.)

Barrant's version of events is substantially different. Barrant testified that, after yelling at him, he ran downstairs immediately to confront plaintiff. According to Barrant, he tried to grab plaintiff, and plaintiff slashed at his face with a knife-like object. Barrant then saw plaintiff flee on his bicycle, and Barrant chased after him in his girlfriend's car. After catching up with plaintiff, Barrant exited his vehicle, displaying his shield, identification card, and gun, and stated, "Police, don't move."[1] (Barrant Dep. at 66.) Barrant testified that plaintiff then responded, "You fucking guy again, I'm going to kill you." (*Id*.) Plaintiff then again slashed forcefully at Barrant with his knife. Barrant drew his weapon from his holster and fired one shot to the ground from about five feet away of plaintiff, who was still holding the knife. Plaintiff then fled from the scene but fell off of his bicycle less than a block away. Barrant approached plaintiff, who said, "You fucking guy, you didn't have to shoot me, why [did] you sho[o]t me, you shot me." (*Id*. at 79.) Barrant testified he had chased after plaintiff for the purpose of retrieving his personal property.

After the shooting, New York City Police Department (NYPD) officers arrived, arrested

---

[1] In plaintiff's Rule 56.1 Statement, he does not dispute that Barrant identified himself as a police officer. However, at his deposition, plaintiff testified that he did not hear exactly what Barrant had yelled. Plaintiff also did not testify as to whether he saw Barrant display a badge.

plaintiff, and transported him to Elmhurst Hospital. Barrant testified that, upon arrival, the police officers told him to put his gun down. Plaintiff testified that Barrant identified himself as "a cop" to the police officers. (Devito Dep. at 124.) At some point, Barrant made a statement about the incident to the Department of Correction. Although plaintiff disputes both of Barrant's reports that plaintiff slashed at him with a knife, as admitted in plaintiff's Amended Complaint and Rule 56.1 Statement, plaintiff had in his possession a folding Leatherman tool with a knife and screwdriver function. At his deposition, plaintiff maintained he never removed the Leatherman tool from his pocket.

Plaintiff was indicted on April 26, 2002 and arraigned in Queens County Supreme Court on May 14, 2002. On January 9, 2003, plaintiff pled guilty to robbery in the first degree and criminal possession of stolen property in the fifth degree. Pursuant to the plea agreement, upon plaintiff's successful completion of a residential drug treatment program, the Queens District Attorney's office dismissed the charge of robbery in the first degree. Plaintiff's misdemeanor conviction for criminal possession in the fifth degree remains undisturbed.

## II. Summary Judgment

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56©. The court must view all facts in the light most favorable to the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59, 90 S. Ct. 1598, 26 L.

Ed. 2d 142 (1970)).  In drawing inferences in favor of the nonmoving party, "the court is not entitled to weigh the evidence." *St. Pierre v. Dyer*, 208 F.3d 394, 404 (2d Cir. 2000).  Nevertheless, "[c]onclusory allegations, conjecture, and speculation . . . are insufficient to create a genuine issue of fact." *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998).  The court must deny summary judgment "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson*, 477 U.S. at 248.

### III.    Initial Dismissal of Parties

Before addressing plaintiff's claims substantively, several defendants should be terminated from this case.  It is undisputed that the following defendants were never served with a summons and complaint: NYCDC Chief Merlado, Capt. Purvis, Capt. Dellaratta, C.O. Robinson, C.O. Jones, C.O. Kelly, Det. Guardino, and P.O. Paul.  Accordingly, claims against them are dismissed.  The parties also point out  correctly that the NYPD and NYCDC, as agencies of the City of New York lacking independent legal existence, are nonsuable entities.  *See, e.g.*, *Falcis v. New York City Police Dep't*, 1997 WL 65798, at *1 (E.D.N.Y.).  As such, claims against the NYPD and NYCDC are dismissed.

### IV.    Section 1983 and Other Related Claims

Section 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." *Baker v. McCollan*, 443 U.S. 137, 145 n.3, 99 S. Ct. 2689, 61 L. Ed. 2d 433 (1979). Section 1983 provides as follows:

Every person who, under color of any statute, ordinance, regulation, custom, or

5

usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . .

42 U.S.C. § 1983. For claims under § 1983, plaintiff must prove "that (1) the challenged conduct was attributable at least in part to a person who was acting under color of state law and (2) the conduct deprived the plaintiff of a right guaranteed under the Constitution of the United States." *Snider v. Dylag*, 188 F.3d 51, 53 (2d Cir. 1999).

## 1.    False Arrest

Plaintiff alleges false arrest under both 42 U.S.C. § 1983 and state common law. Under New York law, the elements of false arrest are: "(1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged." *Savino v. City of New York*, 331 F.3d 63, 75 (2d Cir. 2003) (quoting *Bernard v. United States*, 25 F.3d 98, 102 (2d Cir. 1994)). "The existence of probable cause to arrest constitutes justification and is a complete defense to an action for false arrest whether that action is brought under state law or under § 1983." *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996) (internal citation and quotation marks omitted). As enunciated by the Second Circuit, "probable cause to arrest exists when the authorities have knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested." *Calamia v. City of New York*, 879 F.2d 1025, 1032 (2d Cir. 1989). Although for malicious prosecution claims, an indictment gives rise to a presumption of probable cause that the plaintiff must rebut, for false arrest claims, the burden is on the defendants

to show probable cause for the arrest.  *Savino*, 331 F.3d at 75–76.

Plaintiff does not dispute that probable cause existed for *an* arrest.  However, he argues that, because he was initially arrested for serious felony charges, including attempted murder and first degree robbery, but his only standing conviction is for a misdemeanor, arrest on such disparate charges constitutes false arrest.  In support of this argument, plaintiff cites *Cameron v. Fogarty*, which held that a plaintiff "can under no circumstances recover [under a false arrest claim] if he was convicted of the offense for which he was arrested."  806 F.2d 380, 387 (2d Cir. 1986).  Apparently, plaintiff suggests that the opposite premise must hold true, i.e., that if a suspect is *not convicted* of an offense for which he is arrested, this means plaintiff *can recover* for false arrest, presumably because there was no probable cause for the arrest.  Not only is this conclusion unsupported by principles of logic,[2] but it is also unsupported by the facts of the *Cameron* case.  The plaintiff in *Cameron* was arrested for charges other than those of which he was ultimately convicted: "Cameron was then placed under arrest and charged with several offenses including grand larceny, criminal impersonation, and criminal possession of stolen property. . . . Cameron was convicted of first degree criminal possession of stolen property, in violation of N.Y. Penal Law § 165.50."  *Id*. at 382–83.

Moreover, accepting plaintiff's legal theory would discourage the government from entering into plea agreements, particularly those negotiated in furtherance of an alternative to incarceration program, if an accused could then sue for false arrest on charges that were dropped pursuant to a plea agreement.  Here, it is undisputed that plaintiff took Barrant's knapsack and was in possession of the Leatherman tool with a knife function when arrested.  The police officers also may have heard from

---

[2] The inverse of a proposition is not necessarily true.  While plaintiff cites the proposition "If A, then not B," this does not make true the proposition "If not A, then B."

Barrant that plaintiff slashed at him with a knife-like object and threatened to kill him. Plaintiff's insistence in his memorandum of law that "no felony was committed by him" and that the charges for which he was arrested and ultimately convicted were exceedingly dissimilar is undermined by the fact that plaintiff pled guilty to the felony of robbery in the first degree.[3] Indeed, a plea of guilty establishes probable cause as a matter of law. *See, e.g.*, *DiPilato v. Vill. of Holley, N.Y.*, 2004 WL 2646552, at *2 n.6 (W.D.N.Y.). Defendants have met their burden of showing probable cause to arrest plaintiff on all grounds. Therefore, summary judgment is granted to defendants on plaintiff's false arrest claims under § 1983 and state law.

### 2.    Excessive Force

Plaintiff's second claim under § 1983 is for excessive force. In his Amended Complaint, plaintiff alleges the "physical force used upon plaintiff by defendants" caused him "pain, suffering, hospitalization, shock, surgery, disability, loss of full use of limb, and severe and extreme emotional distress, embarrassment, humiliation and deprivation of constitutional rights." (Am. Compl. ¶¶ 30, 32.) The only "physical force" plaintiff refers to in the Amended Complaint is "being shot by Officer Barrant." (*Id*. ¶ 18.) Though plaintiff makes a vague reference to "handcuffing" in his memorandum of law, there is no allegation in the Amended Complaint that plaintiff sustained any injury from handcuffing. Plaintiff also does not allege that Barrant arrested him: "The Police Officers and Correction Officers arriving on the scene . . . continued the arrest of Mr. DeVito based upon the statements of Officer Barrant." (Id. ¶ 17.)

---

[3] The charge of robbery in the first degree was dismissed only upon defendant's completion of a drug rehabilitation program. Plaintiff received a double benefit as a consequence of the plea agreement: drug treatment and dismissal of the felony conviction.

In cases such as this one, where the alleged excessive force occurred "outside the context of an arrest," plaintiff's § 1983 claim is analyzed under the Fourteenth Amendment Due Process Clause. *Hemphill v. Schott*, 141 F.3d 412, 418 (2d Cir. 1998). To establish excessive force based on a due process violation, plaintiff must show that Barrant's conduct "shocks the conscience." *See id.* (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973) (quoting *Rochin v. California*, 342 U.S. 165, 172, 72 S. Ct. 205, 209, 96 L. Ed. 183 (1952))). According to plaintiff, he never displayed any weapons or slashed at Barrant with a knife, and he was shot from behind while riding his bicycle away from the scene. Based on these facts, a reasonable jury could find Barrant's actions "shock[ed] the conscience."

*Under Color of State Law*

Defendants nevertheless allege Barrant was not a state actor, which would preclude liability under § 1983. "[W]hile it is clear that 'personal pursuits' of police officers do not give rise to section 1983 liability, there is no bright line test for distinguishing 'personal pursuits' from activities taken under color of law." *Pitchell v. Callan*, 13 F.3d 545, 548 (2d Cir. 1994). That the peace officer was off-duty at the time of the incident is not determinative, and the court must examine the nature of the officer's actions as a whole. *See id.* Liability may attach where an off-duty officer "invokes the real or apparent power of the police department." *Id.* Viewing the facts in the light most favorable to plaintiff, a jury could conclude that Barrant was acting under color of state law. Although Barrant was off-duty, in chasing plaintiff, flashing his badge, and identifying himself as a police officer in an attempt to apprehend plaintiff, Barrant could be viewed as having "invoke[d] the real or apparent power of the police department." *See, e.g.*, *Davis v. Lynbrook Police Dep't*, 224 F. Supp. 2d 463, 475–76 (E.D.N.Y.) (summary judgment denied as to § 1983 claims where

plainclothed, off-duty police officer on disability leave—who, while intoxicated, menaced law-abiding driver into stopping vehicle—showed his badge and identified himself as a police officer). Summary judgment as to plaintiff's excessive force claim is thus denied as to Barrant, former NYCDC Commissioner William Fraser, and the City of New York.[4] Summary judgment is granted as to the remaining individual defendants for lack of personal involvement in the shooting. *See Moffitt v. Town of Brookfield*, 950 F.2d 880, 886 ("personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983") (quoting *McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir. 1977)).

### 3.    Failure to Intervene

Plaintiff alleges the defendants "failed to intervene to prevent or end the unlawful conduct inflicted upon plaintiff by defendant Officer Barrant." (Am. Compl. ¶ 36.) "It is widely recognized that all law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence." *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994). Where an officer knows or has reason to know that another officer is using excessive force, for example, that officer may be liable if it was possible to intervene and prevent the harm. *See id.* However, here, it is not alleged that any of the other

---

[4] As is explained below, the City of New York could face *Monell* liability if the jury finds an excessive force violation. Defendant Fraser also is not dismissed because a supervisory individual may be held liable under certain circumstances, including by direct participation, failing to remedy the alleged wrong, creating or perpetuating the custom or policy that caused the constitutional harm, being grossly negligent in managing the subordinates who caused the constitutional injury, or showing "deliberate indifference" to constitutional rights. *See Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994). Summary judgment is premature for these defendants, since the plaintiff has not yet conducted all of his *Monell* discovery.

defendants saw Officer Barrant chase or shoot plaintiff. The other officers arrived at the scene after the shooting. Therefore, as there was absolutely no opportunity for intervention, this claim is dismissed. *See Universal Calvary Church v. City of New York*, 2000 WL 1538019, at *9 (S.D.N.Y.)

### 4.     Equal Protection

Plaintiff alleges he was denied equal protection under the Fourteenth Amendment because of the "shooting" and that defendants' actions, taken "under color of law, were wrongful, reckless[,] and intentional," as well as "taken in bad faith[,] . . . willful[,] and malicious." (Am. Compl. ¶¶ 40–41.) Plaintiff also describes the actions as "conscience shocking . . . [and] oppressive in a constitutional sense." (*Id.* ¶ 40.) Plaintiff's equal protection claim is dismissed as deficient on its face, because it fails to allege membership in a protected class or that plaintiff was treated differently than others similarly situated. *See, e.g.*, *Harlan Assocs. v. Inc. Vill. of Mineola*, 273 F.3d 494, 499 (2d Cir. 2001); *Caracciola v. City of New York*, 1999 WL 144481, at *5–6 (S.D.N.Y.).

## V.     Remaining State Law Claims

### 1.     False Imprisonment

Plaintiff argues the twenty-two-day delay in his arraignment constituted false imprisonment.[5]

---

[5] Defendants are correct in pointing out that there is no private right of action under N.Y. CRIM. PROC. LAW § 140.20, which provides that an individual arrested without a warrant must be arraigned "without unnecessary delay." *See Watson v. City of New York*, 92 F.3d 31, 37–38 (2d Cir. 1996). In interpreting this phrase, the New York Court of Appeals has held an arraignment delay of more than twenty-four hours to be "presumptively unnecessary." *People ex rel. Maxian ex rel. Roundtree v. Brown*, 77 N.Y.2d 422, 426 (1991). However, plaintiff may still assert his claim for delay in arraignment under common law false imprisonment. *See Sorensen v. City of New York*, 2000 WL 1528282, at *11–12 (S.D.N.Y.) ("*Sorensen III*").

The court also notes that defendants misinterpreted *County of Riverside v. McLaughlin* in

Under New York law, the elements of a false imprisonment claim are the same as those for false arrest, which the court has outlined above. *See, e.g.*, *Curry v. City of Syracuse,* 316 F.3d 324, 335 (2d Cir. 2003). The court has already found that plaintiff was not falsely arrested as a matter of law, since, based upon probable cause, plaintiff's confinement was privileged with regard to the fourth element. However, plaintiff must also prove intent to delay in order to prevail on his false imprisonment claim. *See Sorensen v. City of New York*, 2003 WL 169775, at *2 (S.D.N.Y.) ("*Sorensen VI*"). Indeed, a claim of false imprisonment based on delay in arraignment "is different from the run-of-the-mill false imprisonment claim in which a plaintiff was falsely arrested and thereafter subjected to unprivileged imprisonment. . . . [In such cases,] the plaintiff was not falsely arrested, and thus her confinement was privileged but for the delay in her arraignment." *Sorensen v. City of New York*, 2000 WL 1808560, at *1 (S.D.N.Y.) ("*Sorensen IV*").

Defendants suggest the delay was caused unintentionally because of plaintiff's hospitalization, a lack of personnel to conduct a hospital arraignment, and problems obtaining plaintiff's fingerprints. Defendants also cite a decision by Judge Joseph Grosso of the New York State Supreme Court, Queens County, stating that "it does not appear from the record in this case that the People intentionally delayed in any way, arraigning this defendant to avoid serving this CPL 190.50 notice." (Defs.' Ex. I. at 3.) Plaintiff is correct that Judge Grosso's decision pertained specifically to whether the indictment should be dismissed for failure to comply with N.Y. CRIM.

---

trying to argue that plaintiff's arraignment was delayed only fifteen days. 500 U.S. 44, 47, 111 S. Ct. 1661, 114 L. Ed. 2d 49 (1991). In *McLaughlin*, the Supreme Court discussed the government's burden to prove "bona fide emergency or other extraordinary circumstance" when a probable cause determination has not been made within forty-eight hours. *Id*. The Court noted that intervening weekends do *not* qualify as extraordinary circumstances. *Id*. Furthermore, the court has determined that there was probable cause to arrest plaintiff.

PROC. LAW § 190.50, which is not the issue here. Moreover, the decision did not establish lack of intent as a matter of law, and intent did not bear on Judge Grosso's ultimate finding.[6]

Nevertheless, while defendants have provided some reasonable explanations for the delay in arraignment, plaintiff has put forth no evidence of intent. Rather, plaintiff relies on *Sorensen VI*, *supra*, to argue that whether defendants intentionally delayed his arraignment is a question of fact that can never be resolved on a motion for summary judgment. *See* 2003 WL 169775. However, in *Sorensen VI*, the plaintiff pointed out specific evidence that could support a showing of intent, for example, that other prisoners in her cell were arraigned more quickly. *See id*. at *3. It was because of the facts asserted by plaintiff that the court in *Sorensen VI* found that plaintiff had "adduced enough evidence to create genuine issues of material fact with respect to this issue [of intent]." *See id*. at *3–4. Indeed, courts do grant motions for summary judgment where a plaintiff has put forth no evidence of intent. *See, e.g.*, *Whalen v. County of Fulton*, 941 F. Supp. 290, 298–99 (N.D.N.Y. 1996) (summary judgment granted in favor of defendants on fraudulent misrepresentation claim where no facts in record indicated intent to defraud). Considering plaintiff's version of events, there is no evidence in this case upon which a reasonable juror could conclude that defendants intended to delay plaintiff's arraignment. Therefore, defendants' motion for summary judgment is granted.

**2.      Violation of the New York State Constitution Search and Seizure Clause**

Plaintiff's claim under article 1, section 12 of the New York State Constitution, which protects the "right of the people to be secure in their persons, houses, papers and effects, against

---

[6] Judge Grosso based his decision on the following: "Since in the present case, the defendant was not arraigned in local criminal court on the felony complaint, there is no obligation upon the People to serve 190.50 notice upon the defendant."  (Defs.' Ex. I at 2–3.)

unreasonable searches and seizures," is dismissed. There is no private right of action under the New York State Constitution where, as here, remedies are available under § 1983. *See Flores v. City of Mount Vernon*, 41 F. Supp. 2d 439, 446–47 (S.D.N.Y. 1999).


### 3. Battery and Assault

While "battery" is "an intentional wrongful physical contact with another person without consent," an "assault" is "an intentional placing of another person in fear of imminent harmful or offensive contact." *United Nat'l Ins. Co. v. Waterfront N.Y. Realty Corp.*, 994 F.2d 105, 108 (2d Cir. 1993). Summary judgment is denied as to plaintiff's battery and assault claims against Barrant, as these claims parallel plaintiff's excessive force claims and involve questions of fact. *See LaLonde v. Bates*, 166 F. Supp. 2d 713, 719 (N.D.N.Y. 2001).

*City Liability Under the Doctrine of Respondeat Superior*

The City of New York faces liability for the battery and assault claims on a respondeat superior theory if Barrant's actions were taken within the scope of his employment:

> Under New York law, an employer may be held liable based on a theory of respondeat superior only where an employee was engaged in the furtherance of the employer's enterprise at the time of the employee's wrongdoing, and the employer was or could have been exercising some control over the employee's activities.

*Longin v. Kelly*, 875 F. Supp. 196, 201–02 (S.D.N.Y. 1995). This inquiry is distinct from whether Barrant was acting under color of law for the purposes of the § 1983 excessive force claim. *See Wahab v. City of New York*, 2005 WL 323716, at *11 (S.D.N.Y.). That a peace officer was off-duty when the alleged events occurred is not determinative of whether the officer was acting within the scope of his or her employment. *Longin*, 875 F. Supp. at 202. It is also not determinative that Barrant may have flashed his badge or identified himself as a police officer. S*ee Mahmood v. City*

*of New York*, 2003 WL 21047728, at *2–3 (S.D.N.Y.). Nor is it determinative that, as a peace officer, Barrant was authorized to carry an off-duty gun, make off-duty arrests, or use deadly force under necessary circumstances. *See Campos v. City of New York*, 759 N.Y.S.2d 843, 844 (Sup. Ct. N.Y. County 2003) (citing New York criminal procedure laws regarding peace officer duties and stating, "[s]tate law and NYPD regulations, while relevant, do not resolve the vicarious liability issue"). While some off-duty actions may be considered within the scope of an officer's employment, where the officer's actions are "brought on by a matter wholly personal in nature, the nature of which is not job-related, his actions cannot be said to fall within the scope of his employment." *Longin*, 875 F. Supp. at 202 (quoting *Stavitz v. City of New York*, 471 N.Y.S.2d 272, 274 (1st Dep't 1984)).

The City asserts that, because Barrant was not engaged in the care, custody, or control of inmates, his duties as a correction officer, he was not acting within the scope of his employment. This argument overlooks Barrant's peace officer status. The City's contention that Barrant had never before made an off-duty arrest prior to the April 22, 2002 incident is also unavailing, as the scope of employment inquiry solely relates to the events in question in the instant case. While Barrant may have identified himself as a police officer and flashed his badge, these facts do not necessarily end the inquiry in plaintiff's favor. Among the cases cited by plaintiff, the most similar to this case is *Frazier v. State of New York*, 476 N.E.2d 318 (N.Y. 1985), which involved an off-duty correction officer who shot a bystander while pursuing two other men who allegedly had robbed him. The New York Court of Appeals held that there was a question of fact as to whether New York State was liable under the respondeat superior doctrine. Similarly, in *Medley v. City of New York*, 1998 WL 938731 (E.D.N.Y.), the court denied summary judgment as to the City of New York where two off-

15

duty police officers working as security guards for a housing complex, in violation of NYPD policy, entered into an argument with a man who was blocking traffic.

In cases such as *Frazier* and *Medley*, the off-duty officers' actions stemmed from incidents where they may have been authorized to act in virtue of their status as peace officers. These cases contrast with those involving "matter[s] wholly personal in nature" such as *Davis v. City of New York*, 641 A.D.2d 271 (1st Dep't 1996), where the court found that an off-duty correction officer, who became angry after the plaintiff allegedly cut in front of him in a McDonald's restaurant line, was not acting within the scope of his employment. *See also Medley*, 1998 WL 938731, at *2 (making this distinction and collecting cases). Other cases cited by the City are also distinguishable. For example, in *Longin v. Kelly*, the court specifically stated that the off-duty correction officer, who approached plaintiff for making too much noise in a neighborhood park, had no authorization to "use . . . deadly physical force to prevent the escape of a person who the officer believe[d] may have been guilty of underage consumption of alcohol." 875 F. Supp. at 204. The court in *Longin* noted, however, that peace officers are authorized to use deadly force to prevent an escape by a person who has committed a felony and is "armed with a firearm or deadly weapon." *Id*. at 204 n.9 (quoting N.Y. PENAL LAW §35.30(1)). Unlike the correction officer in *Longin*, under Barrant's version of events, he was arguably authorized to use deadly force. As a question of fact remains regarding whether Barrant was acting within the scope of his employment, summary judgment is denied as to the City of New York on plaintiff's respondeat superior claims for battery and assault.

4.      **Negligence and Negligent or Intentional Infliction of Emotional Distress**

Summary judgment is granted in favor of defendants on plaintiff's negligence claim, as this

claim is precluded by plaintiff's assault and battery claims, which are based upon intentional rather than negligent conduct. *Id.* at 719–20 (where plaintiff has alleged claims "premised upon a defendant's allegedly intentional conduct, a negligence claim with respect to the same conduct will not lie") (quoting *Naccarato v. Scarselli*, 124 F. Supp. 2d 36, 45 (N.D.N.Y. 2000)).

Regarding plaintiff's claims for negligent or intentional infliction of emotional distress, "[t]he New York Court of Appeals has strongly cautioned against allowing emotional distress claims to be brought where other tort remedies are available." *Moore v. City of New York*, 219 F. Supp. 2d 335, 339 (E.D.N.Y. 2002). As such, these claims must be dismissed because "the conduct underlying the claim[s] falls within the ambit of traditional tort liability" and is included in plaintiff's claims for assault and battery. *Id.* (quoting *Hansel v. Sheridan*, 991 F. Supp. 69, 75 (N.D.N.Y. 1998)).

5. **Abuse of Process**

To prevail on an abuse of process claim under New York law, plaintiff must show that a defendant "(1) employs regularly issued legal process to compel performance or forbearance of some act[,] (2) with intent to do harm without excuse or justification, and (3) in order to obtain a collateral objective that is outside the legitimate ends of the process." *Cook v. Sheldon*, 41 F.3d at 73, 80 (2d Cir. 1994). Plaintiff alleges that Barrant intentionally provided false information to the police officers so that they would effect plaintiff's arrest. Not only does this allegation contradict plaintiff's own admission that he stole Barrant's property, but also the existence of probable cause, which the court has found as a matter of law, bars plaintiff's abuse of process claim. *See Almonte v. City of New York*, 2005 WL 1229739, at *5 (E.D.N.Y.). Summary judgment is accordingly granted to defendants on this claim.

17

6.        **Negligent Hiring, Retention, Training, and Supervision**

Plaintiff maintains discovery was stayed on his claims against the City for negligent hiring, retention, training, and supervision and that, therefore, they cannot be dismissed on summary judgment. The City argues that only plaintiff's *Monell* claims were stayed, which the City argues are entirely different from plaintiff's state law claims. The court agrees with plaintiff that discovery pertaining to his claims for negligent supervision and training was stayed but is not persuaded that discovery as to his claims for negligent hiring and retention was stayed. At a July 26, 2004 telephone conference with Magistrate Judge Roanne L. Mann, plaintiff's counsel raised the issue of deposing "somebody with knowledge of . . . training." (7/26/04 Tr. at 10.) The City acknowledged receiving a request for an individual "who had information regarding or knowledge concerning New York City policies and procedures regarding off-duty correction officers, violent incident or shootings." (*Id*. at 11.) The City further noted and objected to receiving an additional, last-minute request for "a person with knowledge of the training given to correction[] officers regarding off-duty arrests." (*Id*.) Magistrate Judge Mann ruled:

> We will defer that issue. I am not going to rule at this time whether the [second, last-minute] request was timely or untimely. But in any event, it appears that both sides have agreed that the witness would be a M[o]nell type witness and since there is a motion pending . . . I am going to defer the entire issue.

(*Id*. at 12.) Read in the light most favorable to plaintiff, Magistrate Judge Mann's ruling included deposition of witnesses with knowledge of training and supervision, whether under *Monell* or state law. Therefore, summary judgment is denied as to plaintiff's negligent training and supervision claims.

However, at no time during this conference, which was the last conference before the end of

discovery, did the parties discuss the need for further evidence pertaining to plaintiff's negligent hiring and retention claims. There is no indication whatsoever that discovery was stayed as to these claims. Furthermore, plaintiff addressed only the negligent training and supervision claims in his memorandum of law:

> It is wholly improper for the City to argue, for example, that no evidence exists *regarding polices or the supervision* of off-duty correction officers such as Mr. Barrant. One of our prominent claims has always been that the City does not *train, supervise and reprimand* this large peace officer force. Discovery, it was agreed, on this topic would occur after the instant motions.

(Pl.'s Mem. at 29 (emphasis added).) The court deems plaintiff's negligent hiring and retention claims abandoned by virtue of his failure to address them in his memorandum responding to defendants' summary judgment motion. *See Taylor v. City of New York*, 269 F. Supp. 2d 68, 75 (E.D.N.Y. 2003). Accordingly, summary judgment is granted on these claims.

## VI.     City Defendants' Motion to Bifurcate Trial and Stay Discovery

On May 20, 2004, the City defendants filed their still pending application to bifurcate, for purposes of discovery and trial, plaintiff's municipal liability claims under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978). In *Monell*, the Court held that a local government may not be held liable under § 1983 purely on a respondeat superior theory. 436 U.S. at 691. Rather, a municipality will only be liable if it "causes"[7] an employee to violate another's

---

[7] The verb "causes" comes from § 1983:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws . . . .

constitutional rights. *Id.* at 692. To prove municipal liability under § 1983, plaintiff must show that his constitutional rights were violated by "execution of a government's policy or custom." *See id.* at 694.

Although plaintiff's false arrest claim under § 1983 has been dismissed, the court has denied summary judgment as to plaintiff's excessive force claim. If a jury were to find that Barrant violated plaintiff's constitutional rights while acting under color of law, only then would it have to determine whether the City has an "official policy or custom" that would expose it to liability.

Pursuant to FED. R. CIV. P. 42(b):

> The court, in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy, may order a separate trial of any claim, cross-claim, counterclaim, or third-party claim, or of any separate issue or of any number of claims, cross-claims, counterclaims, third-party claims, or issues, always preserving inviolate the right of trial by jury as declared by the Seventh Amendment to the Constitution or as given by a statute of the United States.

The court thus has broad discretion to order separate trials if it is concerned with convenience, judicial economy, or avoiding prejudice. *See Ismail v. Cohen*, 706 F. Supp. 243, 251 (S.D.N.Y. 1989). Despite this discretion, the moving party has the burden of justifying bifurcation, and separate trials are the exception rather than the rule. *Thrower v. Pozzi*, 2002 WL 91612, at *5 (S.D.N.Y.). The City defendants support bifurcation and a stay of discovery because plaintiff seeks voluminous discovery concerning the policies, practices, and procedures of the Department of Correction regarding, *inter alia*, off-duty arrests and shootings and the use of deadly force. They argue that the *Monell* discovery is not relevant to whether a constitutional violation occurred and that separate trials are warranted to avoid prejudice, protect against jury confusion, and preserve judicial

resources.

Just as bifurcation may save judicial resources, it could cause a waste of judicial resources if witnesses and evidence must be presented twice. *See Ricciuti v. New York City Transit Auth.*, 796 F. Supp. 84, 86 (S.D.N.Y. 1992). While the City defendants argue *Monell* discovery would not be relevant to the jury's assessment of Barrant's actions, plaintiff argues it is relevant in determining possible personal involvement or liability of former NYCDC Commissioner Fraser, who has not been dismissed from this case. Although this is true, the City and Fraser will not face liability if the jury does not find a § 1983 violation as to Barrant.

Nevertheless, several concerns warrant denying the City's bifurcation motion and request to stay discovery. Because the court has denied summary judgment as to the battery and assault claims against Barrant and the City's corresponding respondeat superior liability, the City would have to defend itself at trial on the vicarious liability claims even if a separate trial were held for the *Monell* and negligent training and supervision claims. Furthermore, if discovery is stayed, there is a risk that the court would have to empanel two separate juries if a second trial were necessary. The City's motion to stay discovery and application to bifurcate are therefore denied. However, after discovery is complete, the City may renew its motion to bifurcate, and the court will consider the circumstances at that time.

## VII.    Conclusion

Based on the foregoing, the following claims against the respective defendants remain in this case: (1) excessive force claim against Barrant, the City of New York, and former NYCDC Commissioner William Fraser; (2) battery and assault claims against Barrant and corresponding

vicarious liability claims against the City of New York; and (3) negligent training and supervision claims against the City of New York. Summary judgment is denied on these claims. All defendants, including cross-defendants, are dismissed except for Barrant, Fraser, and the City of New York. Summary judgment is granted to defendants on all other remaining claims. The City's motion to stay discovery and application to bifurcate are denied.

SO ORDERED.

DATED:  Brooklyn, New York
        August 23, 2005

                                      _____/s/_____
                                            DORA L. IRIZARRY
                                         United States District Judge